DAYTON–MONTGOMERY COUNTY PORT AUTHORITY, APPELLANT, *v.* MONTGOMERY COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Dayton–Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision,* 113 Ohio St.3d 281, 2007-Ohio-1948.]

(No. 2006–0492—Submitted January 23, 2007—Decided May 9, 2007.)

O'CONNOR, J.

{¶ 1} In this appeal, appellant, the Dayton–Montgomery County Port Authority, the owner of a recently constructed office building in downtown Dayton, seeks to reduce that building's cost valuation as computed by the county auditor and as affirmed by the Board of Tax Appeals ("BTA") for the tax year 2003. The Port Authority contends that the actual-cost figures it presented to the board of revision constitute a more accurate valuation than the figures used by the auditor. In particular, the Port Authority asserts that its actual-cost evidence refutes the auditor's use of a 1.6 "grade factor adjustment," which had the effect of increasing the value assigned to the building by 60 percent over the costs as listed on the basic cost schedules that the auditor presumptively utilized. Given the present record, we agree with the Port Authority, and we therefore reverse the decision of the BTA and remand the case. On remand, the BTA is instructed to value the building on the basis of the cost evidence presented to the board of revision, without using any grade-factor adjustment.

## RELEVANT BACKGROUND

{¶ 2} The evidence in this case consists of the transcript certified by the board of revision to the BTA, an audiotape preserving the testimony before the board of revision, and the exhibits introduced by the Port Authority at the board of revision.

{¶ 3} The sole witness was Thomas Fister, who had overseen the construction of the building at issue on behalf of the Port Authority, and who furnished background information concerning the construction. The project involved demolition of a Sears facility, the remediation of the land, and the construction of a five-story office building, and represented a concerted effort by the city of Dayton and Montgomery County to entice a private corporation to locate in the office building. The benefit sought by the Port Authority was not profit but the creation of some 550 jobs and the concomitant generation of income tax revenue. Next door, a six-story parking garage was constructed, but it is not part of the parcel at issue. Enticements to the private tenant included provision of free parking in the adjacent parking garage and enjoyment of the 30–35 parking spaces in the basement. Rent of the office building was calculated to recover costs of financing the building, without any allowance for the cost of providing parking, and was well short of assuring any profit to the Port Authority. Contracting on the project began, according to Fister's recollection, in 2000, with construction beginning in 2001 and ending in 2002. Fister characterized the project as a "design-build" project in which a general contractor handled all the arrangements for construction and submitted invoices reflecting all costs incurred.

{¶ 4} The Port Authority submitted documentation of actual project costs to the board of revision. The final "application for payment" confirms a contract

date of October 20, 2000, and reflects a final tally of costs incurred as of August 31, 2002. The contractor's application for payment documented a total project cost of $13,537,710. Notably, the application for payment explicitly encompassed items such as "building permit" and "architectural/engineering design," which constitute "soft costs" associated with the project.

{¶ 5} Another of the Port Authority's exhibits at the board of revision set forth adjustments leading to a total proposed cost valuation of the building of $12,680,305. In its brief, the appellant now interprets the evidence as showing actual building costs of $13,934,260.

{¶ 6} The Port Authority contrasts these actual-cost figures to the county auditor's calculation of replacement cost. The second page of the property record card shows that the auditor aggregated replacement-cost figures to arrive at a total of $11,936,463. The auditor then applied a "grade factor" of 1.6, which adjusted the cost figure up to $19,098,340. Because the building was new, the auditor recognized a depreciation of one percent, arriving at a final cost of the building of $18,907,360. Adding the land value of $316,620 to the cost of improvements, the county arrived at a valuation of $19,223,980.

{¶ 7} The essence of the Port Authority's argument lies in comparing the auditor's cost figure (*before* the grade-factor adjustment) of $11,936,463 to its own original cost valuation of $12,680,305. The Port Authority maintains that the similarity of these figures negates the validity of applying the 1.6 grade-factor adjustment. The auditor has offered no evidence in support of the grade-factor adjustment.

{¶ 8} Without explanation, the board of revision adjusted the value of the building from $18,907,360 to $18,115,160. Also without explanation, the board of revision adopted $133,290 as the value of the land, rather than $316,260. On the auditor's property record card, the figure adopted by the board of revision constitutes the "prev. years" appraised value, not the current appraised value, of the land.

{¶ 9} The Port Authority appealed to the BTA, where the parties waived a hearing and submitted the case on the record developed before the board of revision. After reviewing the evidence, the BTA concluded that the Port Authority had "offered only part of the analysis necessary to derive a market value for the subject." *Dayton–Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision* (Feb. 10, 2006), B.T.A. No. 2004–A–1227, at 7 ("*Port Authority*"). The BTA found the Port Authority's analysis to be "incomplete" because it lacked "testimony from an expert appraiser who could derive not only the hard costs, but also the soft costs, associated with the construction of the property, as well as study the market and analyze whether the actual costs represented market costs on tax lien date." Id. Rejecting both the Port

Authority's suggested valuation and the board of revision adjustment, for which "there exists no credible explanation," the BTA found itself "constrained to revert to the auditor's valuation." Id. at 8. As to the land, however, the BTA adopted the board of revision value of $133,290 rather than the $316,620 figure used by the auditor. Id. On an appeal as of right from the BTA decision, the Port Authority asks us to reverse the BTA.

## ANALYSIS

### The Cost–Valuation Method

{¶ 10} R.C. 5713.03 requires the county auditors in Ohio to "determine, as nearly as practicable, the true value of each separate tract, lot, or parcel of real property and the buildings, structures, and improvements located thereon." The true value of real property is " 'the amount for which that property would sell on the open market by a willing seller to a willing buyer.' " *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 21, 523 N.E.2d 826, quoting *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 412, 25 O.O.2d 432, 195 N.E.2d 908. Accord *Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 8, 9. In performing their duties under the statute, the auditors are directed to apply "the uniform rules and methods of valuing and assessing real property as adopted, prescribed, and promulgated by the tax commissioner." R.C. 5713.03; R.C. 5715.01 (empowering the Tax Commissioner to promulgate such rules).

{¶ 11} The administrative rules prescribe the methods for valuing land and improvements. Ohio Admin.Code 5703–25–12 states that when valuing improvements, the auditors may use the market-data, the income, or the cost approach.

{¶ 12} The cost method of valuing improvements seeks to determine what a potential buyer would expect to pay in constructing a replacement for the existing building. That number is significant because "[a] prospective purchaser will not rationally pay $15,000 for a house, or for 100 shares of stock, or for a shipment of wheat if, without serious delay, he can build or buy equally satisfactory substitutes for $10,000." 1 Bonbright, The Valuation of Property (1937) 157. See *Dinner Bell Meats, Inc. v. Cuyahoga Cty. Bd. of Revision* (1984), 12 Ohio St.3d 270, 271, 12 OBR 347, 466 N.E.2d 909, fn. 1. By determining the cost to replace existing improvements, the auditor establishes an upper limit to the amount a buyer would be willing to pay for an existing structure. Id. at 272, 12 OBR 347, 466 N.E.2d 909; *Meijer, Inc. v. Montgomery Cty. Bd. of Revision* (1996), 75 Ohio St.3d 181, 187, 661 N.E.2d 1056. The cost method is appropriately applied when, as here, a building is a new structure not substantially depreciated. The Appraisal of Real Estate (12th Ed.2001) 354 ("Because cost and market value are

usually more closely related when properties are new, the cost approach is important in estimating the market value of new or relatively new construction"); *Higbee Co. v. Cuyahoga Cty. Bd. of Revision,* 107 Ohio St.3d 325, 2006-Ohio-2, 839 N.E.2d 385, ¶ 47 (affirming the BTA's reliance on cost approach where building had been open only two months prior to tax lien date); *Dinner Bell Meats* at 271, 12 OBR 347, 466 N.E.2d 909, fn. 1. When county auditors compute cost value, Ohio Adm.Code 5703–25–12(A) first requires the estimation of "replacement cost new," after which an appropriate deduction must be made for depreciation and obsolescence. Ohio Adm.Code 5703–25–12(B) also directs the auditors to maintain "schedules of all building costs" for separate categories of residential, commercial, industrial, and farm buildings, which are to be used in estimating replacement cost. The rule expressly mentions that the schedules shall be based in part on the "type or grade of building in the area to be appraised."

## The Cost Valuation of the Authority's Building

{¶ 13} In this case, the record does not document the procedures the auditor followed or what schedules the auditor used in assigning a cost value to the Port Authority's building. But when a county auditor acts "within the limits of the jurisdiction conferred by law," the auditor's action is "presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment." *Wheeling Steel Corp. v. Evatt* (1944), 143 Ohio St. 71, 28 O.O. 21, 54 N.E.2d 132, paragraph seven of the syllabus; see, also, *Alliance Towers,* 37 Ohio St.3d at 25, 523 N.E.2d 826. On this record, that presumption is largely intact. Moreover, the actual-cost evidence submitted by the Port Authority bolsters the presumption that the auditor used appropriate cost schedules.

{¶ 14} The auditor's use of the 1.6 percent cost-factor adjustment, however, is a different matter. In this regard, the only evidence in the record—the figure presumptively derived from the auditor's cost schedules, together with the actual-cost evidence presented by the Port Authority—negates the applicability of that factor. The auditor offered no explanation, either before the board of revision or at the BTA, why that factor was applied as opposed to a factor of one, or some other factor. Moreover, neither the auditor nor the school board offered any evidence at all in support of the factor. Since "[w]e cannot affirm a determination of value by the BTA that is not supported by sufficient probative evidence," we cannot affirm the BTA's decision to revert to the auditor's value in this case. *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (2001), 90 Ohio St.3d 564, 567, 740 N.E.2d 276; see, also, *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 15–16, 665 N.E.2d 1098.

{¶ 15} In adopting the auditor's valuation, the BTA reasoned that the actual-cost analysis presented by the Port Authority was incomplete. As a general rule,

we have held that "[t]he burden is on the taxpayer to prove his right to a deduction," and that "[h]e is not entitled to the deduction claimed merely because no evidence is adduced contra his claim." *W. Industries, Inc. v. Hamilton Cty. Bd. of Revision* (1960), 170 Ohio St. 340, 342, 10 O.O.2d 427, 164 N.E.2d 741. Because "the burden of persuasion before the BTA was on [the challenger], not the BOR," we have in a proper case held that "[w]here the BTA rejects the evidence presented to it as not being competent and probative, or not credible," and where "there is no evidence from which the BTA can independently determine value," the BTA "may approve the board of revision's valuation, without the board of revision's presenting any evidence." *Simmons v. Cuyahoga Cty. Bd. of Revision* (1998), 81 Ohio St.3d 47, 48, 49, 689 N.E.2d 22.

{¶ 16} By contrast to *Simmons,* the present case is not one in which "there is no evidence from which the BTA can independently determine value." The cost-schedule figures generated by the auditor *before* application of the 1.6 grade-factor adjustment, along with the actual-cost analysis presented by the Port Authority, furnished an adequate basis for the BTA to determine a cost valuation of the building.

{¶ 17} In so holding, we are fully cognizant that the BTA found the Port Authority's cost analysis to be incomplete in two particular respects. First, the BTA would have preferred expert testimony that "could derive not only the hard costs, but also the soft costs." *Port Authority,* B.T.A. No. 2004-A-1227, at 7. Second, the BTA wanted to see a study of the market to determine "whether the actual costs represented market costs on tax lien date." Id.

{¶ 18} In spite of these considerations, we conclude as a matter of law that the cost evidence before the BTA sufficed to establish a prima facie basis for determining value with respect to both points of concern. First, the August 2002 application for payment that the Port Authority put into evidence at the board of revision allegedly set forth all project costs, and the document explicitly contained prominent soft costs such as architectural/design fees and permit fees. Second, the cost schedules the auditor presumptively utilized constitute evidence that the Port Authority's analysis of actual costs does not understate market costs as of the lien date—indeed, the aggregate figure the county itself derived from its cost schedules was lower than the cost figure propounded by the Port Authority.

{¶ 19} Nor do we find any basis for inferring that the 1.6 grade-factor adjustment served the function of updating the cost figures to the tax lien date. For one thing, that does not appear to be the usual function of such an adjustment. See *Hawk v. Washington Cty. Bd. of Revision* (Feb. 3, 1995), B.T.A. No. 94-B-644, at *6-7 (testimony of county's witness that cost tables are developed and grade factors used to adjust for inferior or superior design and

materials). Additionally, the record contains no information tying the selection of the 1.6 factor to the evolution of building costs in Montgomery County.

{¶ 20} Under all these circumstances, it became the burden of the county or the school board to rebut the sufficiency of the Port Authority's evidence as to both points. See *Mentor Exempted Village School Dist. Bd. of Edn. v. Lake Cty. Bd. of Revision* (1988), 37 Ohio St.3d 318, 319, 526 N.E.2d 64. Since none of the appellees presented evidence on either point, the Port Authority's evidence stands unrebutted in the record.

{¶ 21} The school board also raises an issue regarding the Port Authority's failure to present evidence of "entrepreneurial profit," but we conclude that this concern does not render the Port Authority's evidence insufficient on the present record. "Entrepreneurial profit" consists of "the difference between total cost of development and marketing and the market value of a property after completion." The Appraisal of Real Estate at 360. As counsel for the Port Authority pointed out at oral argument, the auditor's own income approach derived a value slightly over $6,000,000—less than half the Authority's own cost valuation of the building. Such a low income projection, when viewed in the context of the need that the city of Dayton and Montgomery County perceived to subsidize the construction project as an incentive to attract private business, supports the conclusion that entrepreneurial profit would not escalate the cost valuation of the building as of the January 1, 2003 lien date. These circumstances likewise placed the burden of rebuttal on the county or the school board, and that burden has not been discharged.

{¶ 22} The foregoing discussion establishes that this case falls outside the holding of *Simmons*. Instead, the present case is controlled by our analysis in *Amsdell v. Cuyahoga Cty. Bd. of Revision* (1994), 69 Ohio St.3d 572, 635 N.E.2d 11; *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 665 N.E.2d 1098 ("*Columbus* (1996)"); and *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (2001), 90 Ohio St.3d 564, 740 N.E.2d 276 ("*Columbus* (2001)"). In both *Columbus* cases, the evidence presented to the board of revision militated against the determination the board of revision reached. In *Amsdell*, the owner presented extensive testimony to the BTA in support of the owner's valuation.

{¶ 23} The common thread running through these cases consists of (1) the presentation of evidence by a party who challenges the board of revision's determination, (2) the tendency of that evidence to undermine or contradict the board of revision's determination, and (3) the absence of evidence offered in rebuttal. In each case, the BTA found that the challenger failed to meet its burden of persuasion. Next, the BTA in each of the cases reverted to the board of revision's determination without pointing to any evidentiary basis for doing so.

{¶ 24} In all three cases, we reversed the BTA. We rejected the notion that board of revision determinations should be accorded a presumption of validity. *Columbus* (1996), 76 Ohio St.3d at 15, 665 N.E.2d 1098; *Amsdell,* 69 Ohio St.3d at 573, 635 N.E.2d 11; accord *Springfield Local Bd. of Edn. v. Summit Cty. Bd. of Revision* (1994), 68 Ohio St.3d 493, 494, 628 N.E.2d 1365. We held that the BTA "is required to meet the standard enunciated in *Black* [*v. Cuyahoga Cty. Bd. of Revision* (1985), 16 Ohio St.3d 11, 16 OBR 363, 475 N.E.2d 1264]," under which the BTA must independently weigh and evaluate the evidence before it in order to make a determination concerning the valuation of the property. *Columbus* (1996) at 15, 665 N.E.2d 1098. We noted that "[w]hen the BTA determines value for a property, that value is a finding of fact," and as such the BTA's determination of value "must be supported by the evidence." *Columbus* (2001), 90 Ohio St.3d at 565, 740 N.E.2d 276. Because "[t]he record the BTA received from the BOR in this matter contained no testimony or evidence to support the BOR's valuation," and because no party before the BTA presented evidence in support of the board of revision's valuation, the BTA "affirmed a valuation that was not supported by any evidence." Id. at 567, 740 N.E.2d 276. And, as already noted, we declared that this court "cannot affirm a determination of value by the BTA that is not supported by sufficient probative evidence." Id.

{¶ 25} In each case, we remanded to the BTA with instructions. We instructed the BTA to "weigh the evidence and state the reasons for its decision." *Columbus* (1996) at 17, 665 N.E.2d 1098; accord *Columbus* (2001) at 567, 740 N.E.2d 276. In *Amsdell,* we noted that based on the evidence of record, the value of the property "was no more than its acquisition and construction costs," and we remanded with the instruction that the BTA consider the owner's evidence in setting value. *Amsdell,* 69 Ohio St.3d at 575, 635 N.E.2d 11.

{¶ 26} In one respect *Columbus* (2001) does differ from the present case. In that case, we predicated our rejection of the board of revision's determination in part on the fact that the board of revision had adopted a different valuation from that made by the auditor. Indeed, we stated in that context that the BTA "would have been justified in adopting" the board of revision's valuation "[i]f the BOR had retained the auditor's original assessed valuation." *Columbus* (2001), 90 Ohio St.3d at 566–567, 740 N.E.2d 276.

{¶ 27} Today we hold that the reasoning we applied in *Columbus* (2001), *Columbus* (1996), and *Amsdell* also applies to *the auditor's* determination of value. Namely, when the evidence presented to the board of revision or the BTA contradicts the auditor's determination in whole or in part, and when no evidence has been adduced to support the auditor's valuation, the BTA may not simply revert to the auditor's determination. Whenever it does so, the BTA is acting

unlawfully by making a finding of value that is affirmatively contradicted by the only evidence in the record.

{¶ 28} Just as we did in *Amsdell* and in the two *Columbus* cases, we reverse and remand with instructions, in this case. We instruct the BTA, on remand, to determine the value of the building based on the cost information already presented and without the use of any grade-factor adjustment.

{¶ 29} Finally, the Port Authority asks that we go a step further and declare a "bright line" rule. The rule that the Port Authority proposes is that recent actual costs are more probative of value than costs derived from cost schedules maintained by the counties. We decline to pronounce such a rule, because we cannot conclude that actual costs are *always* more probative of value than costs derived from general cost schedules and subjected to grade-factor adjustments. The probative value of the evidence must be evaluated on a case-by-case basis. Indeed, our decision in this case rests in part on according some evidentiary significance to the auditor's cost schedules.

{¶ 30} Moreover, we cannot conclude that a county auditor is never justified in applying a grade-factor adjustment such as the factor applied in this case. It is conceivable that a county could provide an explanation and a quantum of evidence that would justify using such a factor in a proper case. Indeed, we cannot rule out the possibility that had the county auditor explained the reasons for applying the 1.6 grade-factor adjustment in this case, that explanation might have furnished a sufficient evidentiary basis for upholding his valuation of the building. All that is certain is that no explanation or evidence was presented here, and as a result, the BTA could not properly adopt a valuation using the factor.

## The Value of the Land

{¶ 31} The BTA found the value of the land to be $133,290. In so doing, it adopted the land value found by the board of revision, but not the one found by the auditor. The latter official had set the value of the land at $316,620. The reduction of this figure to $133,290 appears to be clear error on the part of both the board of revision and the BTA. The property record card gives the lower figure as a previous year's figure, and for that reason the Port Authority expressed at oral argument its willingness to stipulate to the higher land value.

{¶ 32} In spite of the agreement of the parties, however, we have no jurisdiction to effect a change of the land value from the value that the BTA found. Our revisory jurisdiction over BTA decisions depends upon compliance with the statute, R.C. 5717.04, which requires that the appellant set forth in the notice of appeal the errors complained of in the BTA decision. Failure to so specify deprives the court of jurisdiction to grant a party relief on that ground. See *Cleveland Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1994), 68 Ohio St.3d 336,

337, 626 N.E.2d 933, citing *Columbus Bd. of Edn. v. J.C. Penney Properties, Inc.* (1984), 11 Ohio St.3d 203, 204–205, 11 OBR 521, 465 N.E.2d 48.

{¶ 33} The Port Authority made no assignment of error concerning the land value. But even if it had, the Port Authority is arguably not a proper party to assert that issue in its appeal, since it was benefited, not aggrieved, by that error. See, generally, *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, syllabus (appeals may be prosecuted "only to correct errors injuriously affecting the appellant"). To preserve the question properly, either party aggrieved by the BTA's land valuation—the auditor or the board of education—should have filed its own appeal and specified the error. See *J.C. Penney Properties* at 205, 11 OBR 521, 465 N.E.2d 48; *Christian Church of Ohio v. Limbach* (1990), 53 Ohio St.3d 270, 271, 560 N.E.2d 199, fn. 1 (appellee's failure to file cross-appeal precluded consideration of the error it asserted); *Lenart v. Lindley* (1980), 61 Ohio St.2d 110, 115, 15 O.O.3d 152, 399 N.E.2d 1222, fn. 1 (appellee's attempt to assert alternative grounds for affirmance of BTA decision was barred by failure to file a cross-appeal). Since that did not occur, we have no jurisdiction to correct the land valuation, and it follows that on remand the BTA likewise has no authority to depart from its previous finding that the land should be valued at $133,290.

Decision reversed
and cause remanded.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER and CUPP, JJ., concur.

---

Sleggs, Danzinger & Gill Co., L.P.A., and Todd W. Sleggs, for appellant.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Nolan Thomas, Assistant Prosecuting Attorney, for appellees Montgomery County Board of Revision and Montgomery County Auditor.

David C. DiMuzio, Inc., and David C. DiMuzio, for appellee Dayton City School District Board of Education.