[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Musto v. Lorain Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-8058.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8058

MUSTO, APPELLANT, *v.* LORAIN COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Musto v. Lorain Cty. Bd. of Revision,* Slip Opinion No. 2016-Ohio-8058.]

*Taxation—Real-property-valuation—Board of Tax Appeals did not abuse discretion in denying property owner's motion for continuance or motion to disqualify counsel for county and Board of Revision, and BTA acted reasonably and lawfully in retaining auditor's valuation in absence of clear evidence negating it—BTA's decision affirmed.*

(No. 2014-1771—Submitted August 30, 2016—Decided December 13, 2016.)

APPEAL from the Board of Tax Appeals, No. 2013-4191.

_____

**Per Curiam.**

{¶ 1} In this real-property-valuation case, appellant, Cynthia M. Musto, challenges a decision of the Board of Tax Appeals ("BTA") that affirmed the

decision of the Lorain County Board of Revision ("BOR") to retain the county auditor's valuation of her property for tax year 2012.

{¶ 2} Musto argues that the BTA's decision was unlawful and unreasonable in three respects. First, she contends that the BTA should have granted a continuance when her only scheduled witness, a certified appraiser who conducted an appraisal of the property in 2014, did not show up for the BTA hearing. Second, she challenges the BTA's valuation decision, arguing that the evidence that she produced made it unreasonable for the BTA to retain the auditor's valuation and that the BTA had a legal duty to independently determine a value based on the evidence that she presented. Finally, Musto argues that the BTA should have disqualified counsel for the BOR and the auditor because he was also a member of the BOR hearing panel.

{¶ 3} For the reasons explained below, we reject Musto's claims and affirm the BTA's decision.

## FACTS

{¶ 4} Musto owns and occupies the subject property, which is located at 16449 Boone Road in Lorain County. It spans 10.01 acres and has been improved with a 4,094 square-foot single-family home, a pole barn, and an indoor horse arena.

{¶ 5} In tax year 2012, a sexennial reappraisal year in Lorain County, the county auditor valued the property at $547,260. Musto filed a complaint with the BOR requesting a reduction in value to $405,000.

### *BOR proceedings*

{¶ 6} A two-member BOR hearing panel, consisting of the county treasurer and Jack Kilroy, a representative of the county auditor, heard Musto's complaint. Musto's husband testified about the subject property and nearby properties that had recently been sold, and he responded to questions from the BOR panel. He opined that the property's value was $405,000 as of the tax-lien date. And Musto's

attorney submitted a document providing information about the property and identifying two recent "[n]eighborhood [s]ales" and two current "[n]eighborhood [l]istings."

**{¶ 7}** Finally, Musto introduced an appraisal report that had been prepared for financing purposes in 2009. James A. Malloy, a certified Ohio-licensed appraiser, evaluated the property for Third Federal Bank. He relied on the sales-comparison approach, identifying three comparable sales. After making adjustments, Malloy opined a value of $405,000 as of January 30, 2009. The report was certified by the appraiser, but Malloy did not testify before the BOR panel.

**{¶ 8}** On August 7, 2013, the BOR issued a decision retaining the auditor's valuation for tax year 2012. The BOR concluded that Musto had presented insufficient evidence to support a reduction in value.

### BTA proceedings

**{¶ 9}** Musto appealed to the BTA, which scheduled a hearing for 9:00 a.m. on March 4, 2014.

### Preliminary matters

**{¶ 10}** Musto planned to present the testimony of Elizabeth Caldwell at the BTA hearing. Caldwell is an Ohio-licensed appraiser of residential real estate, who had appraised the property on February 13, 2014. At the beginning of the March 4 hearing, Musto's counsel informed the BTA examiner that Caldwell was "running behind" and moved to "continue th[e] hearing to a later date and time." He also asked the hearing examiner to keep the record open for ten days so that he could introduce any future evidence of good cause for Caldwell's absence. Alternatively, Musto's counsel sought permission for Caldwell to participate by telephone.

**{¶ 11}** Counsel for the auditor and the BOR opposed all three requests, and the hearing examiner denied them, emphasizing that the parties had had almost six months' advance notice of the hearing date. The examiner also explained that the

BTA permits telephonic hearings only for matters on its small-claims track, which did not apply to Musto's case.

**{¶ 12}** Musto next objected to "Mr. Kilroy's attendance in representation of the Board of Revision[,] County Auditor[,] and the County Appellees in general at this hearing as he was a neutral member of the BOR tribunal in the decision below." Musto's counsel stated that he was not asking the hearing officer to disqualify Kilroy but was only "noting an objection [for] the record."

**{¶ 13}** In response, Kilroy argued that his representation was consistent with his role on the BOR panel. Under R.C. 5715.02, three individuals serve on a county board of revision: the county treasurer, the county auditor, and a member of the board of county commissioners. In Musto's case, the county auditor exercised his statutory authority to appoint a qualified employee—Kilroy—"to serve in [his] place and stead on" the board of revision. *Id.*

**{¶ 14}** Kilroy then explained that although he is employed by the auditor, he is also an assistant prosecutor for Lorain County, for the limited purpose of representing the county auditor and the BOR. The county prosecutor is the legal adviser of all county officers and boards, including the BOR, and therefore has a statutory duty to "prosecute and defend all suits and actions" to which the BOR is a party. R.C. 309.09(A) (noting exceptions established in R.C. 305.14); *see also State ex rel. Trumbull Cty. Bd. of Elections v. Trumbull Cty. Bd. of Commrs.*, 11th Dist. Trumbull No. 2009 TR 85, 2010-Ohio-2281, ¶ 19.

**{¶ 15}** The BTA overruled Musto's objection, and Kilroy represented the auditor and the BOR at the hearing. Eight days after the hearing, Musto filed a written motion to disqualify Kilroy. She requested a new merits hearing and, alternatively, asked the BTA to remand the matter to the BOR. The BTA denied the motion on September 24, 2014.

4

*Evidence of value*

**{¶ 16}** Musto did not present any witnesses at the BTA hearing. She asked the BTA to consider the statutory transcript from the BOR proceedings, which included Malloy's appraisal report.

**{¶ 17}** Musto also introduced Caldwell's certified appraisal report without accompanying testimony. The report indicated that Caldwell had inspected the property, identified its highest and best use, and analyzed market conditions. In the report, she identified four sales of comparable properties (two of which had barns and an indoor riding arena), made adjustments, and arrived at a valuation of $450,000 as of the tax-lien date.

**{¶ 18}** The auditor and the BOR did not introduce any evidence, but their counsel indicated that he would have liked to question Malloy and Caldwell about their methodologies. Musto's counsel said that Caldwell could be there in less than two hours and would be available to answer any questions then. But the auditor and the BOR did not want to prolong the hearing, and the hearing examiner noted that she had already denied Musto's requests regarding Caldwell at the outset of the hearing.

*The BTA's decision*

**{¶ 19}** On September 24, 2014, the BTA issued a decision affirming the BOR's valuation. The BTA explained that although Musto had submitted Caldwell's appraisal report, it "was not attested to by the author." And it found that Malloy's appraisal was of limited value because it "was done for financial purposes" and "contains an effective date prior to the tax lien date at issue." Thus, the BTA declined to rely on either appraisal report and concluded that Musto had presented insufficient evidence to support the requested adjustment. The BTA affirmed the BOR's decision adopting the auditor's valuation.

**ANALYSIS**

**{¶ 20}** On appeal, Musto asserts three propositions of law:

Proposition of Law No. 1: The decisions of the Board of Tax Appeals to deny the motions to continue the hearing were unreasonable, unlawful, and/or an abuse of discretion, since the BTA failed to properly apply and/or consider this Court's legal standard in *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981).

Proposition of Law No. 2: The Board of Tax Appeals' decision is unreasonable, unlawful, and/or an abuse of discretion, since the BTA failed to exclude and/or disqualify counsel for the Appellees.

Proposition of Law No. 3: The Board of Tax Appeals' decision is unreasonable, unlawful, and/or an abuse of discretion, since the BTA reverted to the Auditor's value despite competent evidence that negated the validity and reliability of the Auditor's value.

### *Motion for continuance*

{¶ 21} Musto first argues that the BTA erred by denying her motion to continue the BTA hearing.

{¶ 22} The decision to grant or deny a continuance lies within the BTA's sound discretion. *Coats v. Limbach*, 47 Ohio St.3d 114, 116, 548 N.E.2d 917 (1989); Ohio Adm.Code 5717-1-16(B). This court will affirm a BTA decision granting or denying a continuance absent a showing that "the BTA's attitude was unreasonable, arbitrary, or unconscionable." *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 14.

{¶ 23} According to Musto, the BTA applied the wrong standard in considering her motion for a continuance. In support, she cites *Unger*, 67 Ohio St.2d

6

65, 423 N.E.2d 1078, which identified various factors relevant to deciding whether to grant a continuance:

> In evaluating a motion for a continuance, a court should note, inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id.* at 67-68. But *Unger* does not suggest that information will always be available about each of these factors or require a court to assign particular weight to any one factor. Furthermore, *Unger* was a criminal appeal, not an administrative one; it is not clear that the same factors are equally important in both contexts.

{¶ 24} In the specific context of BTA appeals, we have considered a number of factors when reviewing the decision to grant or deny a continuance. Relevant considerations may include, inter alia, the requester's compliance with the BTA's procedural rules, the requester's diligence and good faith, and opposition from other parties. *See LTC Properties, Inc. v. Licking Cty. Bd. of Revision*, 133 Ohio St.3d 111, 2012-Ohio-3930, 976 N.E.2d 852, ¶ 14-17. And when the basis for a continuance request is a witness's absence, this court has evaluated the reason for the absence (and whether it is supported by the record), the importance of the witness's testimony to the requester's case, and whether the witness would likely be able to attend if the hearing were continued. *Id.* at ¶ 17; *Coats* at 116-117; *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 53 Ohio St.3d 254, 256, 559 N.E.2d 1351 (1990).

**{¶ 25}** Here, the parties received nearly six months' notice of the BTA hearing date, time, and location. As explained above, Musto intended to present expert testimony from Elizabeth Caldwell, but Caldwell had yet to arrive when the hearing began—for reasons then unknown to Musto's counsel. Musto's counsel sought a continuance (to an unspecified time) or, alternatively, asked the BTA to let Caldwell participate via telephone. The auditor and the BOR opposed the requests, and the hearing examiner denied the motion.

**{¶ 26}** There is no question that Caldwell's testimony was important to Musto's appeal. Caldwell had performed a new appraisal of the property, and she would have been Musto's only witness at the BTA hearing. Musto introduced Caldwell's appraisal report, but Caldwell was not available to explain her methodology or to answer questions. This absence was significant: opposing counsel specifically noted his desire to cross-examine Caldwell about her selection of comparable sales. And, ultimately, the BTA rejected Musto's requested adjustment based on insufficient evidence.

**{¶ 27}** But even so, other factors support the BTA's decision to deny the requested continuance. As an initial matter, no procedural rule expressly permits a last-minute request for a continuance. *See* Ohio Adm.Code 5717-1-16 (formerly Ohio Adm.Code 5717-1-15). And, more important, the record does not show that Musto established good cause at the time of her request. At that point, Musto's counsel had no explanation for the delay:

> THE EXAMINER: Mr. Nowak, do you know why the appraiser is running late?
>
> MR. NOWAK: At this point in time, I do not know for sure why she's running late.

Nor did counsel indicate at that time that Caldwell was en route to the hearing. *Compare King v. Kelly*, 4th Dist. Lawrence No. 02CA42, 2003-Ohio-4412, ¶ 9-14 (brief continuance should have been granted when the court knew that the appellants were en route and the record showed that their absence was not due to neglect or disregard).

{¶ 28} Further, Musto's counsel did not make any statements on the record about his diligence in ensuring the witness's presence at the hearing, his efforts to locate her that morning, or when she would be available. It was not until the parties were making concluding statements that he asked the BTA "to wait for an hour and 45 minutes" so that Caldwell could "answer any cross-examination that the County Appellees' attorney might have, or the Board for that matter." But even then Musto's counsel did not offer a reason for Caldwell's delay.[1] And when opposing counsel challenged the estimated arrival time as speculative, Musto's counsel did not respond.

{¶ 29} Under these circumstances, we defer to the judgment of the hearing examiner, who was in the best position to evaluate the facts and circumstances of the continuance request. Thus, Musto can neither establish an abuse of discretion nor prevail on her related claims that the denial of her motion for a continuance violated due process and prompted an unconstitutional taking.

{¶ 30} For these reasons, we reject Musto's first proposition of law.

### The BTA's valuation determination

{¶ 31} Musto also challenges the BTA's decision to retain the auditor's valuation of her property, arguing that she introduced "competent evidence that negated the validity and reliability of the Auditor's value." Thus, she claims that the BTA had a "statutory duty to determine value from the record."

---

[1] In her brief to this court, Musto asserts that Caldwell "mistakenly went to the wrong location on the day of the hearing."

*Standard of review and burden of proof*

**{¶ 32}** "In reviewing a decision of the BTA, we do not sit as 'a super BTA or a trier of fact de novo.' " *RNG Properties, Ltd. v. Summit Cty. Bd. of Revision*, 140 Ohio St.3d 455, 2014-Ohio-4036, 19 N.E.3d 906, ¶ 18, quoting *EOP-BP Tower*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, at ¶ 17. We "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001). However, the BTA's factual findings are entitled to deference as long as they are supported by " 'reliable and probative' " evidence in the record. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152, 648 N.E.2d 483 (1995).

**{¶ 33}** We "will not disturb" a valuation determination by the BTA "unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. Perhaps most significant in this context is our recognition of the BTA's "wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *EOP-BP Tower* at ¶ 9. Indeed, we will not reverse such determinations by the BTA "[a]bsent a showing of an abuse of discretion," meaning that "the BTA's attitude was unreasonable, arbitrary or unconscionable." *Id.* at ¶ 14.

**{¶ 34}** "When cases are appealed from a board of revision to the BTA, the burden of proof is on the appellant, whether it be a taxpayer or a board of education, to prove its right to an increase or decrease from the value determined by the board of revision." *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001). In order to prevail, the appellant "must present competent and probative evidence * * *; it is not entitled to a reduction

or an increase in valuation merely because no evidence is presented against its claim." *Id.*

{¶ 35} In the usual course, the BTA is "justified in retaining the county's valuation of [a] property when an appellant 'fails to sustain its burden of proof at the BTA.' " *Copley-Fairlawn City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, __ Ohio St.3d __, 2016-Ohio-1485, __ N.E.3d __, ¶ 17, quoting *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 23. However, we have recognized a " 'narrow exception' " to this rule, *id.*, quoting *Colonial Village* at ¶ 24, which applies in "a category of cases in which 'the evidence presented to the board of revision or the BTA contradicts the auditor's determination in whole or in part,' " *id.*, quoting *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 27. When "confronted with clear [ ] evidence negating the auditor's valuation," it is unreasonable and unlawful for the BTA to "adopt[ ] the auditor's valuation rather than determin[e] the taxable value of the property" based on the record as developed by the parties. *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, 11 N.E.3d 206, ¶ 26.

*The BTA reasonably and lawfully retained the auditor's valuation because Musto did not present clear evidence negating it*

{¶ 36} Citing *Dublin City Schools* at ¶ 26, Musto asserts that the BTA could not "revert[ ] to" the auditor's valuation, because she presented "competent" evidence "affirmatively negat[ing]" it. But Musto's evidence did not negate the auditor's valuation of the property, for the reasons explained below.

Caldwell's appraisal report

{¶ 37} At the BTA, Musto introduced a new appraisal report prepared by Elizabeth Caldwell, a certified Ohio appraiser. Caldwell identified four comparable sales, made the necessary adjustments, and opined a value of $450,000 as of the tax-

lien date. The report was certified, but Caldwell did not testify at the hearing. The BTA declined to rely on the report because Caldwell was "unavailable to authenticate [it], provide professional credentials, discuss methodologies utilized, or be cross-examined/questioned by the opposing party's attorney or [the BTA's] attorney examiner." According to the BTA, Caldwell's opinion of value was of little help since the basis for her opinion was not explained.

**{¶ 38}** Musto argues that Caldwell's report was relevant evidence and that the BTA should have considered its contents as evidence of value. In support, she cites *Plain Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 29. In *Plain Local Schools*, a school board argued that an appraisal report was not reliable and probative evidence of value, because the appraiser who had prepared it did not testify. *Id.* at ¶ 18. But the school board had not raised a hearsay objection below, *id.* at ¶ 19, and this court held that the BTA did not plainly err by considering the report as evidence. Instead, we explained that the "record contain[ed] indicia of reliability of the content of the appraisal report," including testimony about the preparation and purpose of the appraisal. *Id.* at ¶ 21.

**{¶ 39}** *Plain Local Schools* is not dispositive here. That decision held only that no plain error occurs when the BTA *chooses* to consider an appraisal report in the absence of the testimony of the appraiser who prepared it. But *Plain Local Schools* does not hold that the BTA *must* consider such evidence. Indeed, such a holding would contradict the court's consistent recognition that the BTA has "wide discretion to determine the weight given to evidence," including appraisal evidence, *R.R.Z. Assocs. v. Cuyahoga Cty. Bd. of Revision*, 38 Ohio St.3d 198, 201, 527 N.E.2d 874 (1988); *accord Plain Local Schools* at ¶ 17. "The BTA may accept all, part, or none of the testimony presented to it by an expert." *Freshwater v. Belmont Cty. Bd. of Revision*, 80 Ohio St.3d 26, 30, 684 N.E.2d 304 (1997).

Malloy's appraisal report

**{¶ 40}** Musto also relied on an appraisal report prepared by James A. Malloy, a certified Ohio appraiser. Malloy had performed an appraisal of the subject property for financing purposes in 2009. In his report, Malloy identified three comparable sales, made adjustments, and opined a value of $405,000 as of January 30, 2009. The appraisal was certified, but Malloy did not testify before the BOR or the BTA. The BTA held that it could not rely on Malloy's report both because he did not testify and because his opinion of value preceded the tax-lien date.

**{¶ 41}** The BTA reasonably declined to rely on Malloy's appraisal report as evidence of value. Malloy had opined a value for the property almost three years prior to the tax-lien date. But "[t]he essence of an assessment is that it fixes the value based upon facts as they exist at a certain point in time." *Freshwater* at 30; *see also Olmsted Falls Village Assn. v. Cuyahoga Cty. Bd. of Revision*, 75 Ohio St.3d 552, 555, 664 N.E.2d 922 (1996). And Musto did not introduce testimony alongside the appraisal to explain its application to the tax-lien date. *Compare Plain Local Schools*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, at ¶ 27; *AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 16-17.

**{¶ 42}** Moreover, "[a]ppraisals for financing purposes are not necessarily a complete and thorough evaluation of the property." *Metzler v. Pickaway Cty. Bd. of Revision*, BTA No. 2004-R-481, 2005 WL 2911447, *3 (Oct. 21, 2005). "[T]he purpose, the focus, and the considerations" of these types of appraisals "can be very different," *id.*, "which may frame/impact the scope of the appraiser's work product," *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, BTA No. 2010-Y-3389, 2013 WL 4508915, *3 (Aug. 8, 2013). Thus, unless the appraiser offers "explanatory testimony" and there is an opportunity for cross-examination, it is very difficult to assess the value of a financing appraisal for ad valorem taxation purposes. Metzler at *3. As a result, the BTA has been

"particularly wary of financing appraisals where the appraiser has not been present, either at the BOR or at this board, to testify to the facts and methodology underlying the appraisal report." *Patterson v. Montgomery Cty. Bd. of Revision*, BTA No. 2007-N-827, 2008 WL 2072372, *3 (May 6, 2008). In the absence of direct testimony about the preparation and actual use of Malloy's appraisal, the BTA was reasonably wary of relying on a financing appraisal. *Compare Copley-Fairlawn City School Dist.*, __ Ohio St.3d __, 2016-Ohio-1485, __ N.E.3d __, at ¶ 23-25 (owner testified about the origin and use of a financing appraisal alongside the appraisal, showing the reliance that both he and the bank placed upon it).

Owner's opinion of value

**{¶ 43}** Musto's husband, Michael Musto, testified at the BOR hearing. He described the subject property as unique and opined that its value had decreased since 2009. Mr. Musto compared the property to two nearby comparable sales (for $585,000 and $975,000) and two nearby active listings (for $650,000 and $599,900). He opined that the four nearby properties were not actually comparable, because they had more extensive improvements and were not horse facilities. Mr. Musto explained that Malloy's appraisal was conducted in 2009 when the property was refinanced; Mr. Musto noted that he and his wife still owe approximately $195,000 on the property and that the outbuildings need frequent repair.

**{¶ 44}** Musto's counsel also submitted at the BOR hearing a memorandum from him to the BOR dated July 2, 2013. The memo described the subject property and its condition, identified two "[n]eighborhood [s]ales" and two "[n]eighborhood [l]istings"—the four comparable properties discussed at the BOR hearing—and stated Musto's opinion that the property's value was $405,000 on the tax-lien date. Several documents were attached to the memo, including a location diagram and a map, photographs, information from the county auditor's website, and a news article about declining home values in the Cleveland area. The memo also referred to an affidavit from Musto, which does not appear to be in the record.

Critique of the auditor's methodology

**{¶ 45}** Finally, in an effort to "affirmatively negat[e] the validity of the county's valuation of the property," *Colonial Village*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, at ¶ 24, Musto argues that the county auditor used the wrong method to value the property.

**{¶ 46}** The property-record card indicates that the auditor relied exclusively on the cost approach to valuation. "The cost method of valuing improvements seeks to determine what a potential buyer would expect to pay in constructing a replacement for the existing building." *Dayton-Montgomery Port Auth.*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, at ¶ 12. When using this method, the auditor first estimates the replacement cost new, then makes deductions "for depreciation including physical deterioration" and "functional and economic obsolescence" to ultimately "arrive at the value of the improvements in their present condition." Ohio Adm.Code 5703-25-12(A).

**{¶ 47}** We have recognized that the cost approach is important when " 'estimating the market value of new or relatively new construction.' " *Colonial Village* at ¶ 21, quoting Appraisal Institute, *The Appraisal of Real Estate* 354 (12th Ed.2001). Here, the subject property had been constructed more than 12 years prior to the tax-lien date, which undoubtedly made it more difficult to calculate depreciation than it would have been if the improvements had occurred in the last year or two. But the age of these improvements does not render the cost approach per se inapplicable. *Compare Upchurch v. Cuyahoga Cty. Bd. of Revision*, BTA No. 2014-630, 2015 WL 1406154, *2 (Mar. 19, 2015) ("We * * * question the utilization of the cost approach on a structure that [ ] is over 100 years old. Even with an effective age of 45 years, the calculation of depreciation becomes more difficult and less accurate"). And here, Musto does not identify any point of dispute with the figures yielded by the auditor's cost approach.

Conclusion as to value

**{¶ 48}** Having considered Musto's evidence as well as her critique of the auditor's valuation method, we cannot conclude that this is a case in which the taxpayer's evidence clearly negated the auditor's valuation of the property. Here, the BTA reasonably acted within its broad discretion by assigning minimal weight to Musto's evidence. *See EOP-BP Tower*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, at ¶ 9. Thus, because Musto failed to negate the auditor's valuation, the BTA acted reasonably and lawfully when it retained that valuation of the property.

**{¶ 49}** Musto also suggests that the BTA acted unreasonably and unlawfully because the auditor and the BOR "presented no affirmative market evidence in support of [the] Auditor's valuation." This argument invokes what we have referred to as "the *Bedford* rule," which bars the BTA's reliance on an auditor's valuation under a limited set of circumstances. *See Copley-Fairlawn City School Dist.*, __ Ohio St.3d __, 2016-Ohio-1485, __ N.E.3d __, at ¶ 19, citing *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913. Namely, if a board of revision reduces the auditor's property valuation based on the owner's evidence of value, then the board of education and the BTA cannot rely on the auditor's valuation as a default valuation. *Id.* Instead, the board of education must shoulder its burden by going forward with new evidence at the BTA. *Id.* But here, the *Bedford* rule does not apply, because the BOR *retained* the auditor's valuation; it follows that the BTA could adopt the auditor's valuation as a default even without hearing additional evidence in support.

**{¶ 50}** For these reasons, we reject proposition of law No. 3.

### *Motion to disqualify*

**{¶ 51}** Musto also claims that the BTA erred by denying her motion to disqualify Jack Kilroy as counsel for the county auditor and the BOR. In the context of asking the court to reverse the BTA's decision and remand the cause to the BTA, Musto requests that Kilroy "be disqualified as counsel for the Appellees."

**{¶ 52}** We review a decision not to disqualify counsel for an abuse of discretion. *See Sarbey v. Natl. City Bank, Akron*, 66 Ohio App.3d 18, 23, 583 N.E.2d 392 (9th Dist.1990); *Cleveland v. Cleveland Elec. Illum. Co.*, 440 F.Supp. 193, 196 (N.D.Ohio 1976). Here, Musto claims that an abuse of discretion occurred because Kilroy's representation allegedly violated:

- Prof.Cond.R. 1.12(a), which prohibits a lawyer from "represent[ing] anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator, or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing";

- R.C. 102.03, a provision of Ohio ethics law known as the "revolving door" statute, *see, e.g.*, *State v. Nipps*, 66 Ohio App.2d 17, 419 N.E.2d 1128 (10th Dist.1979), paragraph one of the syllabus, which prohibits a current public official or employee from "represent[ing] a client * * * on any matter in which the public official or employee personally participated as a public official or employee through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or other substantial exercise of administrative discretion," R.C. 102.03(A)(1); and

- the Due Process Clauses and Takings Clauses of the United States and Ohio Constitutions.

**{¶ 53}** We are troubled by Kilroy's dual role in this case: he was both a member of the BOR hearing panel and is counsel for the auditor and the BOR. But even so, Musto is not entitled to the relief that she seeks in this context.

**{¶ 54}** As the preamble to the Rules of Professional Conduct explains, "violation of a rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." Prof.Cond.R., Preamble [20]. Here, Musto has failed to establish that she was injured or aggrieved by Kilroy's dual role. To the contrary, it appears that Kilroy's interests were identical

both as the county auditor's representative on the BOR panel and as the assistant prosecutor representing the county auditor and the BOR panel (after Musto named them as appellees at the BTA). And there is no evidence that Kilroy in any way benefited from his dual role or that it was detrimental to Musto or anyone else. Under these circumstances, we do not find that the BTA abused its discretion by denying Musto's disqualification motion.

{¶ 55} Likewise, even if Musto could prove a violation of the revolving-door statute, relief is not available on direct appeal from a BTA decision. " '[R]eversal or vacation of an administrative decision is not the remedy for a violation of R.C. 102.03; the remedy is to notify the Ethics Commission, who conducts an investigation. If the investigation reveals that there is probable cause to believe that a violation occurred, the Ethics Commission refers the matter to the County Prosecutor.' " *Mather v. Springfield Twp.*, 6th Dist. Lucas No. L-94-196, 1995 WL 302307, \*3 (May 19, 1995), quoting lower court's decision and citing R.C. 102.06; *see also State ex rel. Powers v. Curtis*, 12th Dist. Clinton No. CA2002-10-039, 2003-Ohio-6104, ¶ 25-26.

{¶ 56} Last, Musto claims that "Kilroy's unlawful representation of the Appellees demonstrates that the Appellant was denied her constitutional rights to due process as she failed to receive a fair and impartial hearing before the BOR and the BTA, which also resulted in an unlawful taking of her property." But on the record before us, there is no basis for concluding that Musto was denied a fair and impartial hearing or that she suffered an unlawful taking.

{¶ 57} We therefore reject Musto's second proposition of law.

## CONCLUSION

{¶ 58} For these reasons, we affirm the BTA's decision.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and FRENCH, JJ., concur.

KENNEDY, J., concurs in judgment only.

O'NEILL, J., dissents, with an opinion joined by PFEIFER, J.

_____

**O'NEILL, J., dissenting.**

{¶ 59} I must dissent. The Board of Tax Appeals ("BTA") acted totally unreasonably in denying the request to continue the hearing so that the appraiser who submitted the report introduced by appellant, Cynthia M. Musto, could testify either in person or by another method. This is an informal hearing, and in this day of advanced cell-phone technology, the government agency had a duty to accommodate the witness in a reasonable fashion. I would reverse the decision of the BTA on appellant's first proposition of law.

PFEIFER, J., concurs in the foregoing opinion.

_____

Karen H. Bauernschmidt Co., L.P.A., Karen H. Bauernschmidt, Charles J. Bauernschmidt, Glen E. Littlejohn, and Stephen M. Nowak, for appellant.

Dennis P. Will, Lorain County Prosecuting Attorney, and John P. Kilroy and Gerald A. Innes, Assistant Prosecuting Attorneys, for appellees Lorain County Board of Revision and Lorain County Auditor.

_____