[Cite as *State v. Brown*, 2022-Ohio-4640.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                       No. 111462

v. :

EARNEST BROWN, :

    Defendant-Appellant. :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 22, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653549-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Sarah J. Denney, Assistant Prosecuting Attorney, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant Earnest Brown ("Brown"), raising two assignments of error, appeals from his conviction and sentence following a guilty plea. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} On October 6, 2020, in Cuyahoga C.P. No. CR-20-653549-A, a Cuyahoga County Grand Jury indicted Brown on Count 1, trafficking in violation of R.C. 2925.03(A)(2), with a juvenile specification; Count 2-4, drug possession in violation of R.C. 2925.11(A); Count 3, drug possession in violation of R.C. 2925.11(A); Count 4, drug possession in violation of R.C. 2925.11(A); Count 5, possessing criminal tools in violation of R.C. 2923.24(A); and Counts 6 and 7, endangering children in violation of R.C. 2919.22(A). Counts 1 through 5 included the following forfeiture specifications: forfeiture of a cell phone in a drug case, forfeiture of a scale in a drug case; forfeiture of money in a drug case, and forfeiture of property in a drug case. The charges arose from a narcotics investigation that included a series of controlled drug buys between July 2020 and September 2020. The narcotics investigation led to the issuance of search warrants for Brown's home and vehicle; the police seized U.S. currency and narcotics that tested positive for cocaine and fentanyl.[1]

{¶ 3} On October 21, 2020, Brown pleaded not guilty to the indictment. From November 4, 2020, through February 11, 2021, the trial court held six pretrial hearings in the matter. The November 4, 2020 pretrial hearing was continued to allow for ongoing discovery. The trial court continued the other pretrial hearings due to ongoing discussions between defense counsel and the assistant prosecuting

---

[1] We note that the penalty for a person who violates R.C. 2925.03(A)(2) — trafficking of a controlled substance — and the felony classification for the offense varies based upon the specific drug involved in the violation.

attorney. Brown did not participate in the February 23, 2021 pretrial hearing because he was incarcerated at the Lorain Correctional Institution ("LCI") for a parole violation. On July 28, 2021, Brown was returned to the county jail, and he was ordered released six days later.

{¶ 4} On August 2, 2021, the trial court conducted a telephonic pretrial hearing and issued a journal entry that stated a change of plea was to proceed no later than the final pretrial hearing. Following the trial court's August 16, 2021 pretrial hearing, the court's corresponding journal entry again noted a change of plea was to proceed no later than the final pretrial hearing and scheduled the trial for November 1, 2021.

{¶ 5} Brown was unavailable for the September 13, 2021 pretrial. The trial court's September 14, 2021 journal entry stated the case remained scheduled for trial. On September 27, 2021, the trial court conducted a pretrial hearing. The court's corresponding journal entry reiterated a change of plea must proceed no later than the final pretrial and the court scheduled the final pretrial hearing on October 19, 2021.

{¶ 6} At the start of the final pretrial on October 19, 2021, defense counsel confirmed the parties had exchanged all discovery. Defense counsel then requested a continuance of the final pretrial hearing because Brown was attempting to obtain a drug analysis of the items seized from his home. Defense counsel and the trial court engaged in the following exchange:

DEFENSE COUNSEL:  If I might, there was one aspect, my client has still been trying to find a method to have some of the drugs tested. I'm not sure something can happen between now and next Monday, but he's still trying to do something along those lines. I wanted to make sure the record was clear.

THE COURT:  To do what?

DEFENSE COUNSEL:  He has a real concern about what was found in his home and we've been trying to get a drug — not drug test, but an analysis of the items which were seized from his home. He's still trying to do that. I'm just saying that for the record, he's still trying to do that.

THE COURT:  This case was processed over one year ago, so that may be the case, but today is the final pretrial. There's been multiple, numerous, numerous pretrials here. So if there's anything strategy-wise that is or isn't done, I can't really comment to that. Today is the final pretrial.

I understand discovery has been provided and that there's a proposed change of plea. Is that correct?

**{¶ 7}** The trial court then reiterated the charges against Brown and the associated penalties — including sentences imposed pursuant to S.B. 201, the Reagan Tokes Law, where applicable.  The assistant prosecuting attorney presented the plea agreement, and the trial court provided Brown and his counsel time to discuss the plea offer.

**{¶ 8}** After Brown conferred with defense counsel, defense counsel again requested additional time and the trial court denied that request:

DEFENSE COUNSEL:  Yes. Mr. Brown would like additional time. I understand, Your Honor, he requested additional time to think through, would ask this Court if they would consider allowing him to —

THE COURT:  The answer is no.  Today is the final pretrial.  This case has been — it's probably one of the oldest on the docket.  It's been hanging around for over a year.  Absolutely not.

DEFENSE COUNSEL: He has served — because of his contact with the police in this case, he has served and that's why this case is so long on your docket. He has served a period of 200 days.[2] That's why it's on your docket for that length of time.

THE COURT: I'm absolutely not going to extend this any longer.

DEFENSE COUNSEL: Thank you, Your Honor. All right. We requested that.

THE COURT: So if you need a few more minutes to talk to your attorney, that's fine. We're here. It's nearly noon. We're going to proceed — you don't have to take the plea, sir. If not, it's either going to happen today or you'll proceed to trial. That's nothing surprising. This has been set for some time. So I'd like to know what's happening because we have other matters to take care of. I'll resume the record shortly.

{¶ 9} Following a second recess, Brown accepted the plea agreement and personally commented to the trial court about the lab results on the drugs seized from his home. The trial court refused to discuss the drug analysis, which she categorized as strategy in Brown's case, but stated it would listen to any comments relating to mitigation. Brown withdrew his prior pleas and pleaded guilty to amended Count 1, trafficking in violation of R.C. 2925.03(A)(2), with forfeiture specifications as charged; Count 3, drug possession in violation of R.C. 2925.11(A), with forfeiture specifications as charged; Count 5, possession of criminal tools in violation of R.C. 2923.24(A), with forfeiture specifications as charged; and amended Count 6, endangering children in violation of R.C. 2919.22(A). Counts 2, 4, and 7

---

[2] Defense counsel represented Brown was incarcerated 200 days at LCI. However, the docket indicated Brown's incarceration at LCI from February 23, 2021, through July 28, 2021, for a total of 155 days.

were nolled.  The parties recommended a sentence of three years, with no judicial release.

{¶ 10}  Following Brown's change of plea, the trial court sentenced him to three to four and one-half years on amended Count 1; 12 months on Count 3; 12 months on Count 5; and six months on amended Count 6.  The court ordered that all sentences run concurrent with one another for a total aggregate sentence of three to four and one-half years.  The court also imposed postrelease control and fines.

{¶ 11}  On April 24, 2022, Brown filed a delayed appeal presenting these assignments of error for our review:

> Assignment of Error 1:  The trial court abused its discretion in failing to grant a continuance.

> Assignment of Error 2: The trial court erred by imposing an unconstitutional sentence pursuant to the Reagan Tokes Act.

**Legal Analysis**

{¶ 12}  In his first assignment of error, Brown argues that the trial court abused its discretion when it denied his motion to continue the final pretrial hearing.  Specifically, Brown argues that the state's lab results that showed the drugs seized from his home were positive for both cocaine and fentanyl were incorrect because Brown possessed only cocaine.  Brown argues he needed a continuance of the final pretrial hearing so that he could obtain an independent analysis of the seized drugs.  Further, Brown argues that because he was incarcerated at LCI for a parole violation during the pendency of this case, he had less than three months upon his release to

review the discovery responses with his counsel and arrange for an independent lab analysis.

{¶ 13} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), and *State v. Bayless*, 48 Ohio St. 2d 73, 101, 357 N.E.2d 1035 (1976), *vacated on other grounds*. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463.

{¶ 14} Further,

> [t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Unger* at 67, quoting *Ungar* at 589.

{¶ 15} A court considers the following factors when it rules on a motion for a continuance: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance;

and (6) other relevant factors, depending on the unique facts of each case. *Unger* at 67-68. A court may not have information on each enumerated factor nor must "a court assign particular weight to any one factor." *Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, 71 N.E.3d 279, ¶ 23.

{¶ 16} The trial court denied Brown's oral motion to continue the final pretrial hearing because the case had been processed over one year prior to the final pretrial hearing; discovery was provided to both parties; and the court conducted numerous pretrial hearings at which any discovery issues or additional testing could have been addressed. Further, the parties had adequate notice that the final pretrial hearing was set on October 19, 2021, and a change of plea was anticipated no later than that hearing.

{¶ 17} A review of the record shows that Brown was arrested on September 28, 2020; the indictment was filed on October 6, 2020; and Brown pleaded not guilty on October 21, 2020. The state filed its response to Brown's discovery on October 27, 2020, and that response included the lab reports that concluded cocaine and fentanyl were contained in the drugs seized from Brown's home. Although the state provided the lab reports in October 2020, Brown never informed the court, either by motion or at a pretrial hearing, that he anticipated obtaining an independent drug analysis until almost an entire year later, on October 19, 2021, at the final pretrial hearing.

{¶ 18} Brown could have addressed an independent drug analysis with the trial court during the six pretrial hearings conducted between November 4, 2020,

and February 11, 2021, before Brown was incarcerated at LCI for his parole violation, or during the four pretrial hearings held after Brown's release from LCI. Further, as of August 16, 2021, the parties knew a change-of-plea hearing was to proceed no later than the final pretrial hearing. And on the same date, the court scheduled the trial date for November 1, 2021; the court did not schedule the final pretrial hearing, but the parties knew that hearing would be conducted prior to the trial date. Despite the trial court's docketing of this information, Brown never requested a continuance of the final pretrial hearing or trial or informed the trial court that he wished to obtain an independent analysis of the seized drugs.

{¶ 19} We do not find persuasive Brown's argument that he had only three months following his release from LCI to confer with his counsel and arrange an independent drug analysis. While we acknowledge it may have been more difficult for Brown to communicate with his retained counsel during Brown's incarceration, at LCI, the record does not indicate Brown could not have discussed case strategy with his counsel during those months. Further, Brown offered no justification for why this issue was not addressed prior to his incarceration at LCI.

{¶ 20} To the extent that Brown failed to secure an independent drug analysis during the year prior to the final pretrial hearing, Brown's own actions, or inaction, gave rise to the need for his continuance. Further, Brown did not indicate the length of time needed to obtain an independent drug analysis nor did he state a company had been secured to complete the analysis. Brown's counsel simply stated

at the final pretrial hearing that he was not sure if he could accomplish anything on this issue before the impending trial date.

{¶ 21} Pursuant to the court's reasoning and the circumstances in this case, the trial court did not abuse its discretion when it refused to grant Brown's motion for continuance and, therefore, Brown's first assignment of error is overruled.

{¶ 22} In his second assignment of error, Brown argues that the Reagan Tokes Law is unconstitutional and, therefore, his sentence imposed under that law is invalid. Specifically, Brown argues that his indefinite sentence under the Reagan Tokes Law, enacted under S.B. 201 and R.C. 2901.011, is unconstitutional because it violates his constitutional right to a jury trial, the separation-of-powers doctrine, and his due process rights.

{¶ 23} This court's en banc decision in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.), overruled Brown's challenges to S.B. 201 that are presented in this appeal. Therefore, we are constrained to follow *Delvallie*, and as such, find that the Reagan Tokes Law is constitutional. We must find that Brown's sentence pursuant to the Reagan Tokes Law was not a violation of his constitutional rights and, therefore, his second assignment of error is overruled.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

SEAN C. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR

N.B. Judge Mary Eileen Kilbane joined the dissenting opinion by Judge Lisa B. Forbes and the concurring in part and dissenting in part opinion by Judge Anita Laster Mays in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.

Judge Eileen T. Gallagher joined the dissent by Judge Lisa B. Forbes in *Delvallie* and would have found that R.C. 2967.271(C) and (D) of the Reagan Tokes Law are unconstitutional.