[Cite as *In re K.R.*, 2023-Ohio-466.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE K.R. | : | |
| | : | No. 111750 |
| A Minor Child | : | |
| | : | |
| [Appeal by A.R., Father] | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 16, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD20907457

### *Appearances:*

Rachel A. Kopec, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

MARY EILEEN KILBANE, J.:

{¶ 1} Appellant A.R. ("Father") appeals from the juvenile court's order that terminated his parental rights and granted permanent custody of his minor child, K.R. (d.o.b. 11/11/2014), to the Cuyahoga County Division of Children and Family

Services ("the agency"). The child's mother, L.P. ("Mother"), is not a party to the appeal. For the following reasons, we affirm the juvenile court's judgment.

**Factual and Procedural History**

{¶ 2} On September 2, 2020, the agency filed a complaint in Cuyahoga J.C. No. AD20907457 alleging that K.R. was an abused and neglected child. The complaint alleged: (1) Father had temporary custody of K.R. pursuant to Cuyahoga J.C. No. FA-19-110165; (2) K.R.'s siblings, I.P. and J.P., were committed to the predispositional care of a relative due, in part, to allegations that Mother sexually abused I.P.;[1] (3) Father lacked the judgment necessary to provide safe and adequate care for K.R. based upon Cuyahoga C.P. No. CR-20-651596-B that charged Father with rape, endangering children, pandering obscenity involving a minor, tampering with evidence, and falsification because he allegedly was present during the sexual abuse of I.P., photographed the behavior, and did not intervene or report the abuse;[2] (4) Ongoing domestic violence between Mother and Father in the presence of K.R.; (5) Father lacked safe and appropriate housing since firearms in the home were accessible to K.R.; and (6) Father had prior convictions for domestic violence and endangering children in Cuyahoga C.P. No. CR-18-632726-A that involved his prior

---

[1] Mother and Father were charged in the same criminal case for allegations related to I.P. Mother's charges are listed under Cuyahoga C.P. No. CR-20-651596-A and Father's charges are listed under Cuyahoga C.P. No. CR-20-651596-B. At the time this decision was released, the criminal cases against Mother and Father remained pending.

[2] Mother was charged with rape and sexual battery in the same case, Cuyahoga C.P. No. CR-20-651596-A.

wife and a child from that union. On that same day, the trial court granted the agency's motion for emergency predispositional custody of K.R.

{¶ 3} On September 15, 2020, the juvenile court appointed a guardian ad litem ("G.A.L.") for K.R. At a telephonic pretrial hearing on September 23, 2020, Mother and the agency presented oral motions that requested no contact between Father and K.R. The trial court granted the no-contact motions.

{¶ 4} On October 26, 2020, the agency filed a family case plan that identified these concerns about Father: (1) his history of charges of domestic violence and endangering children; (2) the pending criminal charges of rape, endangering children, and pandering obscenity stemming from the alleged sexual abuse of I.P.; and (3) his abuse of marijuana. The agency referred Father to complete a psychological evaluation and a drug and alcohol assessment, and placed K.R. with her uncle, D.E., where her two siblings had been previously placed.

{¶ 5} On November 18, 2020, the court held an adjudicatory hearing where Father and Mother stipulated to the amended complaint. The amended complaint set forth the following particulars: K.R. was in the temporary custody of Father pursuant to Cuyahoga J.C. No. FA-19-110165; K.R.'s siblings were committed to the temporary custody of a relative pending Cuyahoga C.P. No. CR-20-651596-A that alleged Mother sexually abused her son; Father was charged in Cuyahoga C.P. No. CR-20-651596-B; Mother and Father previously resided together with K.R. and her two siblings; Father would engage in case plan services to address appropriate parenting and to ensure K.R. was not exposed to inappropriate persons; and Father

had a previous conviction in Cuyahoga C.P. No. CR-18-632726-A for domestic violence and endangering children. The court found the agency used reasonable efforts to prevent continued removal of K.R. from the home, specifically referencing Father's substance abuse and mental health concerns. The court adjudicated K.R. abused and neglected and committed her to the agency's temporary custody.

{¶ 6} On February 17, 2021, the agency prepared a semiannual review report ("SAR") that stated K.R. was to remain in D.E.'s custody until resolution of her parents' criminal case and the court lifted the no-contact order. The SAR noted that K.R. was bonded with her siblings and D.E. and was undergoing therapy. The agency noted continued concerns about Father's marijuana use: "His substance use interferes with his ability to meet the basic and safety needs of [K.R.] consistently." The report reflected that Father tested positive for marijuana in September 2020, and failed to submit another drug screen as requested by the agency. Further, the SAR stated that Father was scheduled for a dual diagnosis assessment on November 9, 2020, but he cancelled the appointment due to insurance issues; Father failed to appear for a dual diagnosis assessment scheduled on November 18, 2020; and a dual diagnosis assessment at a new facility was completed on December 3, 2020. The SAR also stated that D.E. became a licensed foster parent and was willing to adopt K.R. and her siblings.

{¶ 7} On April 27, 2021, Father filed a motion to lift the no-contact order. Father argued that the no-contact order was implemented because of allegations about a video depicting sexually inappropriate behavior of K.R. Since no formal

criminal charges had been brought against Father on that issue, he asked for the court to lift the no-contact order. On June 21, 2021, the trial court held a telephonic hearing on the motion and heard testimony from the agency's social worker and K.R.'s G.A.L. who both recommended the no-contact order remain. On the same date of the hearing, the magistrate denied Father's motion.

{¶ 8} On July 1, 2021, the agency filed a motion to modify temporary custody to permanent custody to the agency.

{¶ 9} On August 6, 2021, the agency prepared another SAR. The SAR stated that K.R. continued to thrive under D.E.'s care and she was well-adjusted and bonded with her siblings and uncle. The report noted that Father had completed his domestic-violence services and his drug tests were negative. The report stated that Father's December 2020 dual diagnosis recommended he complete an intensive outpatient program ("IOP") and a sexual addiction assessment. However, the diagnosis incorrectly identified the pending criminal charges against Father and, therefore, he refused to comply with the recommendations. According to the SAR, the listed allegations were "far less severe than [the] actual charges." The SAR recommended continued engagement with K.R., with permanent custody in her future to ensure permanency.

{¶ 10} On September 16, 2021, the trial court conducted a hearing on Father's objections to the magistrate's June 21, 2021 decision — the objections related to the magistrate's decision to deny Father's motion to terminate the no-contact order. The trial court held its decision in abeyance and ordered the extended

service worker to (1) contact K.R.'s therapist for a recommendation on visitation, and (2) determine if Father completed his domestic violence services. Father was also referred for a new alcohol and other drug ("AOD") assessment.

{¶ 11} On November 5, 2021, Father filed two motions: a motion for extension of temporary custody or for legal custody to D.H. and M.H., friends of Father and a motion to continue the upcoming trial. On November 12, 2021, the trial court conducted a telephonic pretrial during which it was established that (1) K.R.'s therapist did not recommend visitation of K.R. with Father, (2) Father had completed his domestic violence services, and (3) the agency's extended service worker had referred Father for an additional dual diagnosis assessment. The trial court overruled Father's objections to the magistrate's June 21, 2021 decision, granted Father's motion to continue trial, and held Father's motion for first extension of temporary custody in abeyance.

{¶ 12} On February 11, 2022, the agency completed another SAR that stated K.R. was thriving in D.E.'s care and was performing quite well at school. According to the report, Father completed domestic violence and parenting services but continued to deny participation in domestic violence or the sexual abuse of I.P. The report stated that Father tested negative for marijuana. The report further stated that Father had not attended the IOP as recommended in his December 2020 dual diagnosis assessment, and the agency had not received a copy of Father's court-ordered dual diagnosis assessment.

{¶ 13} On March 1, 2022, Father filed his second motion to continue the trial. The trial court denied Father's motion although the trial was ultimately continued due to lack of service of one of the parties in a related case.

{¶ 14} On April 14, 2022, the trial court commenced trial. Father made an oral motion for a second extension of temporary custody. Mother agreed to permanent custody of K.R. to the agency, and the court heard testimony from agency workers Christine Lee ("Lee") and Shannon Gallagher ("Gallagher").

{¶ 15} Lee testified that K.R. and her siblings came to the agency's attention in July 2020 when Mother self-reported she had engaged in a sexual relationship with her minor son, I.P., from August 2019 through July 2020. Mother informed the agency that Father told her to engage in sexual relations with I.P. Mother also told the agency that Father entered the room when Mother and I.P. were engaged in sexual activity or stood at the doorway, with the door open slightly, so that he could watch and take pictures or video recordings. According to Lee, I.P. initially denied Father participated in the sexual abuse although he later informed the Agency that both Mother and Father were involved. Lee testified that in July 2020, the agency filed for emergency custody of I.P. and his sister, J.P., but there was insufficient evidence at that time to justify filing for custody of K.R. Lee testified that Father's July 2020 urine screen tested positive for drugs.

{¶ 16} Lee testified that in either September or October 2020, I.P. informed the agency that Father smoked marijuana daily; a gun was present in Father's home that was accessible to K.R.; and that Father was involved in the sexual abuse against

I.P. Specifically, Lee stated I.P. informed her that Father entered the bedroom when I.P. and Mother were engaged in sexual relations, sat on the edge of the bed, and instructed I.P. as to what actions he should take. Lee stated that the agency was concerned about K.R.'s safety due to her accessibility to a gun, Father's daily marijuana use, and Father's pending criminal charges and, therefore, K.R. was taken into the agency's custody. Lee testified that the agency placed K.R. with her siblings at D.E.'s home and the three children received trauma-based focused therapy. Lee testified that Father and D.E. did not like one another and Father objected to placement of K.R. with D.E. Further, Lee testified that D.E. objected to visitation between Father and K.R. and the uncle provided the agency and the police with a video found on K.R.'s iPad that allegedly depicted K.R. in a sexual nature and had been recorded by Father. Lee stated that the court imposed a no-contact order between K.R. and Father after the video was provided to the agency.

{¶ 17} Gallagher, an extended social worker with the agency, testified that she was assigned to K.R.'s case starting in November 2020. Gallagher testified that Father told her he knew Mother and I.P. were engaged in an inappropriate relationship and he reported the same to his probation officer. Father informed Gallagher that he eventually observed Mother and I.P.'s sexual activity and he wanted to help Mother, but he did not report the behavior. Gallagher described Father's case plan objectives as domestic-violence services, parenting services, psychological evaluation, and completion of an AOD assessment, including counseling.

{¶ 18} Gallagher testified that Father completed domestic-violence services through the probation department. Gallagher testified that in the fall of 2021, the parties agreed one more negative drug screen from Father was all that was required. Gallagher also testified that Father submitted several negative drug tests, with the last test being completed in March 2022.

{¶ 19} Gallagher testified that Father completed a dual diagnosis assessment in December 2020 and the assessment recommended Father complete IOP, a sex addiction assessment, and individual therapy. Gallagher stated that Father argued the December 2020 assessment incorrectly identified the pending criminal charges against him and misrepresented his alcohol use and, therefore, he would not pursue the recommendations. While Gallagher testified the agency can send an individual for an additional referral if he disagrees with an assessment, no additional referrals were made for Father until the court later ordered a new referral.

{¶ 20} Gallagher stated that Father obtained a subsequent court-ordered dual diagnosis assessment at Recovery Resources in March 2022, although the agency did not receive a copy of the assessment until June 2022. Gallagher testified that Father failed to sign a release that would have allowed the agency to receive the assessment earlier and would have allowed the agency to provide Recovery Resources input on the case, such as why Father was referred for the assessment. Gallagher testified that the Recovery Resources assessment did not include a recommendation for additional services. Gallagher testified that the agency considered the March 2022 assessment inaccurate because Father provided the

following incorrect information that was included in the report: (1) Father had no pending criminal charges or convictions; (2) Father denied being a witness to any emotional, sexual, or physical abuse of another; and (3) Father denied that he physically, emotionally, or sexually abused anyone. Gallagher testified these statements were incorrect because there were criminal charges pending against Father based upon the sexual abuse of I.P.; Father informed Gallagher that he witnessed I.P.'s sexual abuse; and Father had a prior criminal case charging domestic violence and child endangerment.

{¶ 21} Gallagher testified that Father reported he underwent independent therapy through his employer, but the therapy records were never provided to the agency. Gallagher testified that she requested releases from Father to obtain the individual therapy records as well as a release for the March 2022 assessment, but neither were provided. Defense counsel introduced the agency's activity logs from September 2021 through March 2022 that did not note any request for releases. Gallagher was unable to explain why no such notations were contained in the activity logs; she stated some of her notes were missing although she could not explain why.

{¶ 22} Gallagher testified that K.R. and her two siblings were well-bonded with one another and D.E., with whom they would like to live permanently. Gallagher stated that D.E. wanted to adopt K.R. and her siblings. Gallagher testified that reunification was the agency's goal for the children, but that is particularly difficult in sex abuse cases. Gallagher also testified that the original cause of K.R.'s removal from Father were the criminal allegations relating to I.P.'s sexual abuse and,

therefore, the original cause of K.R.'s removal could not be remedied until resolution of the underlying criminal charges.

{¶ 23} At the close of Gallagher's testimony, the court continued trial until a later date. On June 2, 2022, Father filed a motion to continue the trial — set to resume on June 3, 2022 — because he was recently involved in a motorcycle accident and was taking strong narcotics to manage his pain. Mother objected to the motion for continuance while the agency consented to the motion and the G.A.L. had no preference.

{¶ 24} On June 3, 2022, the trial court denied Father's motion for a continuance, and trial resumed. On that date, the court heard testimony from Andrea Turner ("Turner"), D.E., D.H., a potential legal custodian, and Michael Murphy ("Murphy" or "the G.A.L.").

{¶ 25} Turner testified that she was a licensed practicing therapist with Applewood who provided individual therapy to K.R. and family therapy to K.R. and her siblings. Turner testified that K.R. was initially distrustful, disrespectful, and oppositional due to suffering and trauma she experienced before her placement with D.E. At the time of trial, Turner stated K.R. was changed for the better and lived within a stable home. Turner described the siblings as very close. K.R. did not tell Turner with whom she would like to live but articulated she felt safe with her uncle. Turner conceded that D.E. does not like Father and does not want K.R. to maintain a relationship with Father but stated this issue was not discussed in family therapy

in K.R.'s presence. Turner testified that I.P. told her he was the victim of sexual abuse performed by both Mother and Father.

{¶ 26} D.E. testified that the agency placed K.R. in his care in September 2020. D.E. testified that he has known K.R. and her siblings their whole lives, and that Mother and the three children lived with D.E. for six to nine months several years ago. He testified that Mother and Father failed their children. D.E. testified that he has two biological children who are bonded with K.R. and her siblings. D.E. stated that he attended classes to qualify as a foster parent, and he wants to adopt K.R. and her siblings. D.E. testified that the agency's original goal was reunification and later the agency workers told him reunification was no longer the goal.

{¶ 27} D.H., a long-time friend of Father, testified that he and his wife, M.H., would act as legal custodians for K.R. D.H. testified that he had not seen K.R. for four years and he could not state K.R.'s age. D.H. testified that he was unfamiliar with the details of K.R.'s ongoing custody case, he did not know K.R. received therapy, and he was unaware of the pending criminal charges against Father.

{¶ 28} Murphy testified that as K.R.'s G.A.L., he observed her positive progression while in D.E.'s custody as shown by her weight gain, positive school performance, and trust in D.E. The G.A.L. testified that K.R. had good relationships with I.P. and J.P. The G.A.L. stated that due to the no-contact order, K.R. had not communicated or visited with Father since September 2020. The G.A.L. felt K.R.'s contact with Father could have undermined the progress she experienced while in D.E.'s custody and that could have been disadvantageous for K.R. The G.A.L. was

also concerned that K.R.'s contact with Father could negatively impact I.P., with whom K.R. lived. The G.A.L. stated that he never spoke with Father, observed his home, or spoke with K.R. about whether she wanted to have a relationship with Father. The G.A.L. stated that D.E. does not like Father. The G.A.L. testified that K.R. and her siblings have all voiced their desire to continue living with D.E. The G.A.L. testified that K.R. needs stability and permanency. The G.A.L. testified that he believes it is in K.R.'s best interest to be placed in the permanent custody of the agency.

{¶ 29} On June 6, 2022, the juvenile court issued a judgment entry that found it was in K.R.'s best interest to be placed in the agency's permanent custody. The court terminated its prior order committing the child to the agency's temporary custody and granted the agency's motion for permanent custody, thereby terminating the parental rights of Mother and Father. The court denied Father's motion for legal custody to D.H. and M.H. as well as Father's motions for first and second extensions of temporary custody. At the time of the court's June 6, 2022 journal entry, the criminal case against Father and Mother was unresolved, and the case remains pending as of the date of this opinion.

{¶ 30} On June 30, 2022, Father filed a timely appeal presenting three assignments of error for our review:

> Assignment of Error 1: The trial court erred by denying a reasonable Motion to Continue.

> Assignment of Error 2: An order of permanent custody was against the manifest weight of the evidence.

Assignment of Error 3:  The GAL report and investigation fell short.

**Legal Analysis**

**Motion for Continuance**

{¶ 31}  In his first assignment of error, Father argues that the trial court erred when it denied his June 2, 2022 motion to continue the trial.

{¶ 32}  "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge.  An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion."  *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981), citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), and *State v. Bayless*, 48 Ohio St.2d 73, 101, 357 N.E.2d 1035 (1976).  The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463.  Such broad discretion applies in a permanent custody hearing.  *In re A.W.*, 8th Dist. Cuyahoga No. 109239, 2020-Ohio-3373, ¶ 25.  Further, "[i]n matters involving custody of children, courts must also 'be mindful of the best interests of the children and their need for stability and permanency' in considering a request for a continuance."  *In re K.H.*, 8th Dist. Cuyahoga No. 111287, 2022-Ohio-2588, ¶ 69, quoting *In re I.N.*, 8th Dist. Cuyahoga No. 110067, 2021-Ohio-1406, ¶ 16.

{¶ 33}  "[C]ontinuances shall be granted only when imperative to secure fair treatment for the parties."  Juv.R. 23.  Additionally,

[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Unger* at 67, quoting *Ungar* at 589. A court considers the following factors when it rules on a motion for a continuance: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance that gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case. *Unger* at 67-68. When assessing a motion for continuance, a court need not have information on each enumerated factor nor must "a court * * * assign particular weight to any one factor." *Musto v. Lorain Cty. Bd. of Revision*, 148 Ohio St.3d 456, 2016-Ohio-8058, 71 N.E.3d 279, ¶ 23.

{¶ 34} Here, trial began on April 14, 2022, and was continued until June 3, 2022. On June 2, 2022, Father filed a motion to continue the trial date because Father was recently hospitalized following a motorcycle accident, and he was taking prescription medications for his injuries. The agency consented to the motion while Mother objected and the G.A.L. had no preference. The court did not rule on the motion prior to the trial date, and the parties and their counsel appeared for the scheduled trial. Due to the accident, Father claimed to suffer from road rash on much of his body and additional injuries that resulted in his arm in a sling and his

walking with a cane. Father also stated he was taking strong pain medication for his ongoing pain. Father requested a continuance until the next available court date when he would be more comfortable and able to properly assist with his defense. The trial court acknowledged Father's condition; denied Father's motion for continuance; and indicated it would allow breaks and special accommodations throughout trial as needed by Father.

{¶ 35} On appeal, we find that Father requested a continuance until he could "heal up." Father previously filed two motions to continue the trial, the first of which the court granted. A continuance of the June 3, 2022 trial date would have inconvenienced the multiple parties and counsel involved in the matter. Additionally, the case had been on the court's docket for almost two years — K.R. was removed from her home on September 1, 2020, and a motion for permanent custody was filed on July 1, 2021. Proceeding with the scheduled trial date was in K.R.'s best interest and supported her need for stability and permanency. The record does not demonstrate granting a continuance was "imperative to secure fair treatment for the parties" or that the juvenile court's decision to deny Father's motion for continuance was otherwise unreasonable, arbitrary, or unconscionable. Juv.R. 23. Thus, Father's first assignment of error is overruled.

**Permanent Custody**

{¶ 36} In his second assignment of error, Father argues that the trial court's grant of permanent custody to the agency was against the manifest weight of the evidence.

{¶ 37} A parent has a fundamental interest in the care and custody of his children. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 20. However, parental rights are not absolute: "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). "By terminating parental rights, the goal is to create 'a more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re R.G.*, 8th Dist. Cuyahoga No. 104434, 2016-Ohio-7897, ¶ 21, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

**A. R.C. 2151.414(B)(1)**

{¶ 38} On a motion for permanent custody, a juvenile court must satisfy the two-prong test set forth in R.C. 2151.414 before it can terminate parental rights and grant permanent custody to the agency. The juvenile court must find by clear and convincing evidence that any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e) apply and that it is in the best interest of the child to grant permanent

custody to the agency. *In re R.G.*, 8th Dist. Cuyahoga No. 108537, 2020-Ohio-3032, ¶ 19-20.

{¶ 39} Clear and convincing evidence has been defined as "'that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 40} The juvenile court must find by clear and convincing evidence that one of the following five conditions applies under R.C. 2151.414(B)(1):

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children service agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children

services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1).

**{¶ 41}** Father argues that the juvenile court abused its discretion when it found R.C. 2151.414(B)(1)(a)-(e) applied to the facts of this case. Specifically, Father argued that where he had not been convicted on the pending criminal charges and he was engaged in his case plan objectives, the record lacked clear and convincing evidence to support a finding under R.C. 2151.414(B)(1)(a)-(e).

**{¶ 42}** Here, the juvenile court addressed the first prong of the statutory test by finding that K.R. could not or should not be placed with Father within a reasonable time pursuant to R.C. 2151.414(B)(1)(a). To support a finding that a child cannot or should not be placed with a parent within a reasonable time, the trial court looks to R.C. 2151.414(E)'s 15 enumerated factors. The trial court in the instant case found the presence of (E)(1), (E)(15), and (E)(16) factors supported its decision. R.C. 2151.414(E) states, in pertinent part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held

pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

(16) Any other factor the court considers relevant.

{¶ 43} Our review of the record supports the trial court's findings. Pursuant to R.C. 2151.414(E)(1), Father did not substantially remedy the conditions that resulted in K.R.'s removal from Father's custody. The record shows that K.R. was removed in part due to Father's pending criminal charges relating to I.P. Gallagher testified K.R.'s initial removal from Father's custody was due to the pending sex abuse allegations. However, Lee testified that the agency removed K.R. due to concerns about the child's safety because of Father's pending criminal charges as

well as Father's daily marijuana use and K.R.'s accessibility to a gun in Father's home.  The amended complaint stated Father was to engage in case plan services to address appropriate parenting that would include all the delineated safety concerns.  The pending criminal charges were likely the primary but not the only reason for K.R.'s removal, and Father's actions as they related to his case-plan supported the juvenile court's finding that Father continuously and repeatedly failed to substantially remedy the conditions that caused K.R.'s removal.

{¶ 44} Father's case plan objectives included a psychological evaluation, that encompassed domestic violence, and a complete drug and alcohol evaluation.  Father completed domestic-violence services and no ongoing concerns about this issue were noted in the record.   However, Father's compliance with the psychological evaluation and a complete drug and alcohol evaluation fell short.  In December 2020, Father underwent a dual diagnosis for both psychological and substance abuse assessments.  The assessment recommended Father complete an IOP, a sexual addiction assessment, and individual therapy.  Father argued the recommendations were premised on incorrect criminal charges and, therefore, refused to comply with the recommendations.  Although it was the agency's practice to refer a client for an additional evaluation if the client, such as Father, disputed the recommendations for valid reasons, the agency did not immediately refer Father for a second evaluation.  Upon the juvenile court's order, the agency referred Father to Recovery Resources who completed a second assessment in March 2022.  Recovery

Resources's assessment did not recommend any follow-up services for Father and the agency disputed the validity of the March 2022 assessment.

{¶ 45} Father's behavior following the December 2020 assessment and, more specifically, his participation in the March 2022 assessment demonstrated his unwillingness to engage with the agency in an attempt to remedy the conditions that led to K.R.'s removal. Father refused to comply with any recommendations of the December 2020 assessment. For unknown reasons, the agency did not refer Father for an alternate assessment until ordered by the court to do so. The court-ordered assessment was completed in March 2022. The record shows that the agency did not receive a copy of the March 2022 assessment until the day before trial; the agency's worker testified this delay was related to Father's failure or refusal to release the information to the agency. Further, Gallagher testified that the agency considered the March 2022 assessment inaccurate because it was based on Father's false statements that (1) there were no pending criminal charges or convictions against him; (2) Father was not a witness to any emotional, sexual, or physical abuse of another; and (3) Father did not physically, emotionally, or sexually abuse another. The agency would not accept the March 2022 evaluation and its conclusion that no additional services were required because the incorrect information provided by Father adversely impacted the validity of the assessment and any related recommendations. While Father claimed he underwent individual therapy through work, he never provided documentation to confirm such services were received and to share the therapist's findings and recommendations.

{¶ 46} Father could have been proactive with his services, shared information willingly with the agency, and provided accurate and honest answers during the March 2022 dual diagnosis evaluation in an attempt to lift the no-contact order with K.R. and ultimately regain custody. Instead, Father's actions appeared obstructive. Father failed to demonstrate that he utilized the services made available to him "for the purpose of changing parental conduct to allow [him] to resume and maintain parental duties" and, thus, the court found K.R could not or should not reasonably be placed with Father. R.C. 2151.414(E)(1).

{¶ 47} The juvenile court also found K.R. could not or should not reasonably be placed in Father's care because the R.C. 2151.414(E)(15) and (E)(16) factors applied. Because the court need find only one R.C. 2151.414(E) factor applies, we will not address the additional factors. *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000), citing *In re Shanequa H.*, 109 Ohio App.3d 142, 146, 671 N.E.2d 1113 (6th Dist.1996). Our review reflects clear and convincing evidence that K.R. could not or should not be placed with Father within a reasonable time.

## B. Best Interest of the Child

{¶ 48} Once the trial court found that one of the enumerated R.C. 2151.414(B)(1) factors was present, the court then conducted an analysis of the child's best interest. The juvenile court had to find by clear and convincing evidence that it was in the child's best interest to grant permanent custody to the agency. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 36. On appeal, the court reviews a trial court's best interest analysis for an abuse of discretion. *Id.* at ¶ 37.

{¶ 49} Father argues that the record does not demonstrate placement of K.R. with the agency was in her best interest. Specifically, Father argues that he complied with his case plan objectives when he completed domestic violence services, provided negative urine screens, and completed an alcohol and drug assessment that did not recommend any follow-up care. Father argues that the only reason the juvenile court granted permanent custody to the agency was because of the pending criminal charges against him. The agency contends there was sufficient evidence to support the trial court's finding that it was in K.R.'s best interest to be placed in the agency's permanent custody.

{¶ 50} To determine the best interest of a child, the trial court considers all relevant factors including, but not limited to, those listed in R.C. 2151.414(D)(1)(a)-(e):

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Not one factor listed in R.C. 2151.414(D)(1) is given greater weight than any other factor and only one of the statutory factors needs to be found in favor of the award of permanent custody. *In re L.W.* at ¶ 39, quoting *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. The focus of a best interest determination is the child, not the parent. *In re R.G.*, 8th Dist. Cuyahoga No. 104434, 2016-Ohio-7897, at ¶ 28, citing *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, at ¶ 59; *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994).

{¶ 51} The record reflects that in September 2020, K.R. was placed with her siblings at D.E.'s home where she remained throughout the pendency of this case. The record shows that K.R. had a strong bond with her siblings and D.E., and K.R. was thriving under D.E.'s care. K.R.'s therapist and the G.A.L. stated that K.R. felt safe at D.E.'s home. K.R. told the G.A.L. that she wanted to stay with her uncle, and she wanted him to adopt her. D.E. testified that he wished to adopt K.R. and her siblings. We acknowledge the no-contact order prevented any interactions between K.R. and Father. However, K.R.'s therapist and the G.A.L. supported the no-contact order to protect K.R. as well as I.P., who was the alleged victim of Father's sexual abuse.

{¶ 52} K.R. was only five years old when she was placed with D.E. and eight years old at the time of the custody hearing. At trial, the G.A.L. recommended the court grant permanent custody of K.R. to the agency. A juvenile court properly considers a G.A.L.'s recommendation on a permanent custody motion — and specifically as part of a best interest analysis — where the child is too young to verbalize her wishes. *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 52, quoting *In re B/K Children*, 1st Dist. Hamilton No. C-190681, 2020-Ohio-1095, ¶ 45.

{¶ 53} The record also shows that K.R. was in the agency's custody for almost two years at the time of trial. "A child's best interests require permanency and a safe and secure environment." *In re Holyak*, 8th Dist. Cuyahoga No. 78890, 2001 Ohio App. LEXIS 3105, 10 (July 12, 2001). K.R. deserved a legally secure, permanent placement where she could be safe, thrive, and have all her needs met. Such a placement could not be accomplished with Father, who had evaded compliance with the agency's services, and it was impossible to predict when Father's pending criminal charges would be resolved.

{¶ 54} We find the record provided the trial court with clear and convincing evidence to find permanent custody to the agency, rather than Father, was in K.R.'s best interest.

{¶ 55} The record demonstrates that the juvenile court complied with the statutory requirements of R.C. 2151.414(B)(1) and 2151.414(D) when it determined (1) the evidence showed that K.R. could not or should not be placed with Father

within a reasonable time and (2) it was in K.R.'s best interest to be placed in the permanent custody of the agency. The juvenile court's findings are supported by clear and convincing evidence.

## C. Legal Custody

{¶ 56} Father also argues that even if the court found it was not in K.R.'s best interest to grant custody to him, the court should have granted legal custody to D.H. and M.H. When considering a permanent custody motion, "the trial court has discretion to award legal custody to either parent or to any other person who files a motion requesting legal custody pursuant to R.C. 2151.353(A)(3)." *In re K.R.*, 8th Dist. Cuyahoga Nos. 103438, 103439, 103745, and 103746, 2016-Ohio-1228, ¶ 34.

{¶ 57} D.H. appeared well-intentioned and stated he and his wife would care for K.R. even though they had not seen the child for four years, did not know her age or grade in school, had no knowledge that K.R. received regular therapy, and were unaware of the pending criminal charges against Father. However, the issue before the juvenile court was not whether the children should have been placed with D.H. and M.H., but whether the court should have granted the agency's motion for permanent custody. *In re C.H.*, 8th Dist. Cuyahoga No. 103171, 2016-Ohio-26, ¶ 26. The juvenile court was not required to favor D.H. and M.H. if, after considering the statutory best interest factors, it found permanent custody to the agency was in the child's best interest. *In re E.C.*, 8th Dist. Cuyahoga No. 103968, 2016-Ohio-4870, ¶ 39, citing *In re A.D.*, 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, ¶ 12, citing *In the Matter of B.H.*, 5th Dist. Fairfield No. 14-CA-53, 2014-Ohio-5790, ¶ 72.

{¶ 58} Our review of the evidence supports the trial court's rejection of D.H. and M.H. as legal custodians of K.R. and award of permanent custody to the agency.

**D. Motion to Extend Temporary Custody**

{¶ 59} Father also argues that the juvenile court should have granted his motion to extend the temporary custody order. Father contends that once the pending criminal charges were resolved, K.R. would have been placed in his custody.

{¶ 60} A court may extend a temporary custody order for up to six months where clear and convincing evidence demonstrates significant progress on a case plan and reasonable cause to believe the child will be reunified with the parent before the end of the extension period. R.C. 2151.415(D)(1). However, a court "shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered * * *." R.C. 2151.415(D)(4). A court's ruling on a motion to extend temporary custody is subject to an abuse of discretion standard. *In re Da.B.*, 8th Dist. Cuyahoga No. 105886, 2018-Ohio-689, ¶ 18, quoting *In re T.W.*, 12th Dist. Warren No. CA2017-06-079, 2017-Ohio-8268, ¶ 25, quoting *State v. Perkins,* 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557.

{¶ 61} The agency filed its complaint for abuse and neglect on September 2, 2020. At the time of the custody hearing, Father's criminal trial was set for September 2022. Therefore, a continuance of the custody hearing until a date after the criminal trial — assuming the criminal trial would proceed as scheduled — would

result in a temporary custody order that continued beyond two years, which is not permitted under R.C. 2151.415(D)(4). Additionally, Father failed to conform with his case plan objectives. The record shows that the trial court did not abuse its discretion when it denied Father's motion to extend temporary custody.

{¶ 62} We find the trial court's grant of permanent custody to the agency was not against the manifest weight of the evidence and, thus, we overrule Father's second assignment of error.

**G.A.L.'s Report and Investigation**

{¶ 63} In his third assignment of error, Father argues that the GAL failed to comply with the requirements of Sup.R. 48(D),[3] R.C. 2151.281, and Cuyahoga Cty. Juv. Loc.R. 15 because he did not interview Father, view an interactional visit between Father and K.R., complete a home visit with Father, and ask K.R. her preferred custodian.

{¶ 64} R.C. 2151.281(I) provides broad guidance for a guardian ad litem:

The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child in accordance with rules adopted by the supreme court.

The guardian ad litem shall be given notice of all hearings, administrative reviews, and other proceedings in the same manner as notice is given to parties to the action.

---

[3] Sup.R. 48(D) is now referenced as Sup.R. 48.03(D).

Further,

> Sup.R. 48(D) is a general guideline, and its directives serve "'to provide the court with relevant information and an informed recommendation regarding the child's best interest[.]'" *Id.*, quoting Sup.R. 48(D). Thus, "a trial court has discretion to consider a guardian's opinion and report even when the guardian does not comply with the directives found in Sup.R. 48(D)(13)." *In re T.S.*, 2d Dist. Greene Nos. 2016-CA-26 and 2016-CA-28, 2017-Ohio-482, ¶ 36.

*In re N.B.*, 8th Dist. Cuyahoga No. 105028, 2017-Ohio-1376, ¶ 26. Courts typically refuse to find a G.A.L.'s failure to comply with Sup.R. 48(D) constitutes grounds for reversal. *Id.* at ¶ 26, citing *Miller v. Miller*, 4th Dist. Athens No. 14CA6, 2014-Ohio-5127, ¶ 17-18. Likewise, courts have latitude when following their own local rules and enforcement of local rules is generally within a court's own discretion. *In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 54.

{¶ 65} A review of the record demonstrates that the G.A.L.'s actions sufficiently complied with the cited rules and code sections. The G.A.L. interviewed K.R., her caretaker D.E., her siblings I.P. and J.P., and her therapist, Turner. Due to the sensitive nature of the pending allegations against Father and because the G.A.L. was not a licensed therapist or sex abuse counselor, the G.A.L. was cautious in his discussions with K.R. about her Father. K.R. was only eight years old at the time of the custody hearing. K.R. voiced her preference on more than one occasion to live with D.E. We note that the no-contact order directed at Father and K.R. was granted shortly after the agency obtained temporary custody of K.R. and remained in place at the time of the custody hearing. Thus, the G.A.L. could not have observed

an interactive visit between K.R. and Father and, for the same reason, the G.A.L. believed a home visit to Father was unwarranted. We find the G.A.L.'s failure to interview Father was unusual but based upon the unique circumstances in this matter, the absence of such an interview was not prejudicial. Thus, Father's third assignment of error is overruled.

**{¶ 66}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR